Brian F. Buchanan, SBN 086017
Jeremy M. Friedman, SBN 249706
BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101
Telephone: (213) 457-7350
Facsimile:  (213) 457-7355
Email:      bbuchanan@bplawllp.com

Attorneys for Plaintiff DICKIE WRIGHTSIL

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA –

EASTERN DIVISION

| | |
|---|---|
| DICKIE WRIGHTSIL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MISSION VILLAS RIVERSIDE HOMEOWNERS ASSOCIATION, a California Non-Profit Corporation; SEAN QUATERNIK, an individual; and DOES 1 – 100,<br><br>Defendants. | Case No.  5:25-cv-1670<br><br>**COMPLAINT FOR:**<br>1. **Fair Housing Act Violations (42 U.S.C. § 3601 *et seq.*)**<br>2. **Civil Rights Act Violations (42 U.S.C. § 1982 *et seq.*)**<br>3. **Fair Employment and Housing Act Violations (Cal. Gov. Code § 12989.1 *et seq.*)**<br>4. **Unruh Act Violations (Cal. Civ. Code § 51 *et seq.*)**<br>5. **Intentional Infliction of Emotional Distress (California Law)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff DICKIE WRIGHTSIL, an individual, brings this action against Defendant MISSION VILLAS RIVERSIDE HOMEOWNERS ASSOCIATION, a California Non-Profit Corporation, SEAN QUATERNIK, an individual, and DOES 1 – 100.  Plaintiff alleges as follows:

**INTRODUCTION**

1. On dates continuing until at least as late as December 26, 2023, Plaintiff

- 1 -
**COMPLAINT**

1   DICKIE WRIGHTSIL, who is Black, has been subjected to discrimination on the
2   basis of his race, color, and ancestry, including by written death threats that use racial
3   slurs, at the condominium complex where Plaintiff resides, which is managed by
4   Defendant MISSION VILLAS RIVERSIDE HOMEOWNERS ASSOCIATION (the
5   "HOA").  The discrimination and death threats were perpetrated the HOA, via its
6   agent Defendant SEAN QUATERNIK.

## THE PARTIES

2.  Upon information and belief, Defendant MISSION VILLAS RIVERSIDE HOMEOWNERS ASSOCIATION (the "HOA") is, and at all material times has been, a California non-profit corporation, organized under the laws of the State of California, with its principal place of business at 6736 Palm Avenue, Riverside California 92506.

3.  Upon information and belief, the HOA is, and at all material times has been, an association formed to manage a common interest development under the Davis-Stirling Common Interest Development Act (California Civil Code section 4000, *et seq.*) or under the Commercial and Industrial Common Interest Development Act (California Civil Code section 6500, *et seq.*).

4.  At all material times, the HOA has managed the condominium complex located at or around 200 East Alessandro Boulevard, Riverside, California 92508 (herein, the "Condominium Complex").

5.  Plaintiff DICKIE WRIGHTSIL ("Plaintiff") is a natural person, who resides and at all material times has resided in Riverside County, California, in a condominium unit in the Condominium Complex.  Plaintiff is Black.

6.  Upon information and belief, Defendant SEAN QUATERNIK ("Quaternik") is a natural person, who resides and at all material times has resided in Riverside County, California, in a condominium unit in the Condominium Complex. Quaternik is white.  Upon information and belief, Quaternik is also known as Robert

1  Quarternik and/or Robert Sean Quarternik.

2  7.  Quaternik is, and at all material times has been, the agent, employee, or representative of the HOA; in doing the acts or in omitting to act as alleged in this Complaint, Quaternik was acting within the course and scope of his actual or apparent authority pursuant to such agency or employment; or the alleged acts or omissions of Quaternik as agent were subsequently ratified and adopted by the HOA as principal.

8.  The true names and capacities, whether individual, corporate, associates, agents or otherwise of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sue said defendants by such fictitious names, and will ask leave of this Court to amend this Complaint when the identities of such individuals have been ascertained.  Plaintiff is informed and believes and thereon allege that each of the fictitiously named Defendants DOES 1 through 100 are responsible in some manner for the occurrences herein alleged and are proper parties to this action.  Herein the HOA, Quaternik, and Defendants DOES 1 through 100 are referred to collectively as "Defendants".

9.  Upon information and belief, DOES 1 through 100 are agents of HOA, Quaternik or of each other and helped to effectuate the wrongdoing set forth below. Accordingly, DOES 1 through 100 are liable, as set forth below.

10.  Plaintiff is informed and believes and thereon alleges that, at all times herein relevant, each of the Defendants, including the HOA, Quaternik, and DOES 1 through 100 (collectively, "Defendants"), was a principal, master, employer, co-conspirator, joint venturer and successor in interest of every other defendant, and every defendant was acting within the scope of said agency authority, employment, conspiracy, joint venture and succession of interest.

## JURISDICTION AND VENUE

11.  This Court has personal jurisdiction over each of the Defendants.

- 3 -
COMPLAINT

12. This Court has general jurisdiction over the HOA, which is headquartered in and/or organized under California law.

13. This Court has general jurisdiction over Quaternik, who resides in California.

14. This Court also has personal jurisdiction over Defendants by virtue of specific jurisdiction, as this case arises out and/or relates to Defendants' contacts with the forum State of California.

15. Venue is proper in this Court, based on (inter alia) the location of the Condominium Complex and the events at issue, which occurred in this District.

16. This Court has subject matter jurisdiction over each of the Defendants.

17. Plaintiff's federal claims are brought pursuant to Title 42 of the United States Code Section 3601 *et. seq.* [42 U.S.C. § 3601 *et. seq.*] and the Civil Rights Act of 1964 [42 U.S.C. § 1982 *et. seq.*].

18. Subject matter jurisdiction is founded upon Title 28 of the United States Code Section 1331 [28 U.S.C. § 1331] and the supplemental jurisdiction of this Court under Title 28 of the United States Code Section 1367(a) and Section 1343 [28 U.S.C. §§ 1367(a) and 1343].

## COMMON FACTUAL ALLEGATIONS

19. Having lived in the Condominium Complex for many years, Plaintiff became increasingly aware of the disrepair, deteriorating and even life-threatening condition of nearly all wooden structures throughout the facilities, including staircases, second-story walkways and balconies, and related facial boards and roofs. Plaintiff had also become discouraged by the small number of repairs that were approved and made by the HOA's Board of Directors (the "Board").

20. In December 2016, Plaintiff attempted to run as a candidate for election to the Board, by submitting his name to be added to the slate of nominees to be elected to the Board during 2017 by vote of the condominium owners. However, in

- 4 -
COMPLAINT

December 2016, Quaternik – who resided within the Condominium Complex and had for many years served as the President of the Board – unilaterally and improperly removed Plaintiff's name from the list of candidates for election to the Board.

21. In December 2017, Plaintiff ran as a candidate for the Board for a two-year term. Following his election in December 2017, Plaintiff subsequently volunteered to serve as the Board's Treasurer during 2018 and was elected to serve as President of the Board in 2019.

22. In his capacity as the HOA's Treasurer, Plaintiff reviewed the HOA's books and records as of the close of 2017. During that review, Plaintiff discovered that there was an unaccounted deficiency (i.e., a shortfall) in excess of $64,000.

23. At a Board meeting in 2018, Plaintiff suggested that the Board direct the Board's accountants to investigate the whereabouts of the missing funds. At the same meeting, Plaintiff asked Quaternik if he knew what had happened to that money. Quaternik initially stated that he did not know, repeating this claim at one additional Board meeting before recalling that the shortfall was caused by cost overruns in the HOA's general account that required the Board to borrow from the reserve account ten (10) years prior (in 2008).

24. During Plaintiff's Board presidency and under his leadership, the Board spent approximately $800,000 of the HOA's money to repair, rebuild, and/or replace the unsafe wooden structures throughout the facility as necessary to keep the residents safe.

25. In May 2019, at Plaintiff's request, Plaintiff's friend Leslie Martin posted fliers (at the Condominium Complex) providing notice of an upcoming Board meeting. At the time, Plaintiff was President of the Board. Upon seeing a flier Quaternik – who associated the flier with Plaintiff – said out loud, "**Stupid Nigger.**" (Ms. Martin was not a resident of the Condominium Complex; and it was not until years later that she saw a photograph of Quaternik, which allowed her to identify him

- 5 -
COMPLAINT

as the person who had uttered the racial slur in May 2019.)

26. On December 21, 2020, at the Condominium Complex, three handwritten notes were posted on the front door of Plaintiff's condominium; the three notes stated as follows:

   a. **"WE WANT YOU DEAD NIGGER."**

   b. **"Watch your back Black Nigger"**

   c. **"Dee, give back our money you theif or else!"**

27. Defendants were responsible for the writing and posting of these notes.

28. Quaternik participated in the writing and posting of these notes.

29. At least one of these notes was written and posted by Quaternik, who was President of the Board of the HOA.

30. As a result of these notes, Plaintiff suffered severe emotional, mental, and psychological distress and anguish, as well as humiliation – all which was a foreseeable result of Defendants' conduct that was directed towards Plaintiff. Among other things, Plaintiff feared for his life and no longer felt safe walking in the evening or attending events or visiting friends within the Condominium Complex or even away from the Condominium Complex. Among other things, Plaintiff required therapy and medication.

31. Defendants posted the notes as a result of deep racism and prejudice against Black people. As a result of the deep racism and prejudice, Defendants took umbrage at Plaintiff's investigation that into the missing $64,000, which led Quaternik to worry that he would be held accountable for the funds' misappropriation and by resentment regarding Plaintiff's ability to accomplish renovations that had eluded Quaternik during his time as a President of the Board. The dealings with Plaintiff offended Quaternik, due to deep his racism and prejudice against Black people.

32. After Plaintiff served his term as President of the Board, Quaternik was subsequently elected to hold that position again.

33. Subsequently, Plaintiff ran as a candidate for Board election again in an election that was held on or about December 12, 2023.

34. On December 12, 2023, Quaternik encountered John Boyer, who had gone to the Condominium Complex clubhouse to deliver the ballot marked by his mother, who is a member of the HOA. Upon Mr. Boyer's arrival at the clubhouse, he noticed that people were dispersing so he asked another member who was in charge of the meeting. He was directed, by the other member, to speak to Quaternik. Quaternik reached out his hand to shake Mr. Boyer's hand. As they shook hands, Quaternik leaned forward towards Mr. Boyer and said, "**We beat the nigger again**."

35. On December 26, 2023, at the Condominium Complex, Plaintiff's vehicle had a handwritten note posted on it. In handwriting using straight lines intended to be untraceable via handwriting analysis:

> **LYEING ASS NIGGER THEIF**
> **YOU OWE US A MILLION DOLLAR**
> **WE WANT YOU <u>DEAD</u>**
> **WATCH YO**
> **BACK NIGGEr**
> **GONA KILL U**

With spelling mistakes (and one instance of inconsistent capitalization) corrected, the December 2023 note stated:

> **LYING ASS NIGGER THIEF**
> **YOU OWE US A MILLION DOLLARS**
> **WE WANT YOU <u>DEAD</u>**
> **WATCH YOUR**
> **BACK NIGGER**
> **GONNA KILL U**

36. A copy of the December 2023 note is attached hereto as Exhibit A.

37. Defendants – including Quaternik, who was President of the Board of the HOA at the time the December 2023 note was written and posted – were responsible for the writing and posting of the December 2023 note.

38. Defendants' posting the December 2023 note, taken on its own (and also taken together with other circumstances, including prior threats and racial slurs), constituted discrimination and discriminatory interference with property rights, on the basis of Plaintiff's race, color, and ancestry.

39. Defendants' posting the December 2023 note, taken on its own (and also taken together with other circumstances, including prior threats and racial slurs), unlawfully created and maintained a hostile environment harassment and a hostile housing environment on the basis of Plaintiff's race, color, and ancestry.

40. Defendants' posting the December 2023 note, taken on its own (and also taken together with other circumstances, including prior threats and racial slurs), constituted unwelcome conduct (by Defendants) that was sufficiently severe or pervasive as to interfere with Plaintiff's use or enjoyment of a dwelling – thereby constituting hostile environment harassment.

41. Defendants' posting the December 2023 note, taken on its own (and also taken together with other circumstances, including prior threats and racial slurs), constituted an attempt to evict Plaintiff from the Condominium Complex.

42. Defendants' posting the December 2023 note, which was written and posted by the Board's President (Quaternik), constituted racially motivated harassment (and harassment based on color and ancestry), which violated Plaintiff's property rights as an owner at the Condominium Complex, including (without limitation) Plaintiff's right to hold ownership of real estate. This violation occurred on the basis of the note taken on its own (and also taken together with other circumstances, including prior threats and racial slurs).

43. Defendants' posting the December 2023 note, taken on its own (and also taken together with other circumstances, including prior threats and racial slurs), constituted outrageous conduct.

44. Defendants' posted the December 2023 note as a result of racism against

Black people, which was further fueled by Board President Quaternik's ongoing resentment and negativity towards Plaintiff (as set forth above); Quaternik's resentment and negativity (towards Plaintiff) were intensified by Plaintiff's running as a candidate for election to the Board on or about December 12, 2023.

45. The posting of the December 2023 note was an act done by or on behalf of the HOA and/or was ratified by the HOA (via its Board).

46. The HOA took inadequate measures to combat the misconduct, including the racially-motivated harassment and discrimination.

47. Each of the Defendants aided, abetted, incited, compelled, or coerced the doing of acts declared unlawful by federal and California law, or the attempt to do such unlawful acts.

48. The December 2023 note's content is directly connected to Defendants. Since Plaintiff had previously investigated the missing $64,000 that Quaternik had misappropriated, Quaternik attempted to turn the tables by alleging that Plaintiff was the one who had misappropriated funds – with reference to the general approximate amount of money that Plaintiff had directed towards renovation of the Condominium Complex (although the note overlooked the fact that those renovations were legitimate and much-needed).

49. There are numerous additional indicia that Quaternik wrote the notes, with threats and racial slurs, that were directed towards Plaintiff in December 2020 and December 2023. For example, Pat Norris, who is a resident of the Condominium Complex and was on the Board from December 2018 to December 2020, has stated that **"Board President Sean Quaternik is a racist"** and that Quaternik directed his racial animus at Plaintiff.

50. Additionally, there was Quaternik's statement to John Boyer on December 12, 2023, as set forth above.

51. Also, in addition to removing Plaintiff's name as a candidate in the

- 9 -
COMPLAINT

1  December 2016 election, Quaternik otherwise took improper actions to attempt to
2  exclude Plaintiff from service on the Board.  There was a scheduled December 8,
3  2020 election meeting, during the COVID pandemic crisis.  On or about December 4,
4  2020, Governor Newsom issued a stay-at-home order.  Thereafter, Quaternik, as the
5  HOA's agent, converted the meeting from in-person to a virtual meeting (via Zoom).
6  However, upon making this change, Quaternik, as the HOA's agent, failed to comply
7  with legal requirements, including those under the HOA's bylaws, which mandate that
8  that personal/individual notice needs to be given to all members prior to a member
9  meeting.  Instead, Quaternik relied on posting notice in common areas, without
10 providing personal/individual notice (or log-in information).  Quaternik contacted
11 only selected homeowners (who did not include Plaintiff), so as to manipulate the
12 process in a manner that would avoid the participation or election of Plaintiff.  In
13 failing to abide by requirements for providing notice of the virtual meeting, the
14 motivation and Quaternik (and the HOA), at least in part, was to exclude Plaintiff.
15 (Indeed, when Plaintiff brought an action in Riverside Superior Court (Case No.
16 CVRI2100567), the Court ruled (on June 4, 2021): "it is the order of the court that
17 motion/ application is granted and the election is invalidated. The Mission Villas
18 Riverside Homeowners Association is to hold a new election.")

19      52.   In posting written notes with threats and racial slurs, Defendants
20 subjected Plaintiff to discriminatory conditions and harassment, and Defendants
21 attempted to evict Plaintiff from the Condominium Complex.

22      53.   Defendants have created and maintained discriminatory housing practices
23 that have persisted through the posting of the note on December 26, 2023 and
24 thereafter.

25      54.   Due to Defendants' treatment of Plaintiff, including (without limitation)
26 posting the above-mentioned written notes with threats and racial slurs, Plaintiff has
27 suffered severe emotional, mental, and psychological distress and anguish, as well as

humiliation – all which was a foreseeable result of Defendants' conduct that was directed towards Plaintiff.

## FIRST CAUSE OF ACTION

### Fair Housing Act Violations (42 U.S.C. § 3601, *et seq.*)

### (Against All Defendants)

55. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

56. Defendants violated the Fair Housing Act (42 U.S.C. § 3601, *et. seq.*), by (*inter alia*) discriminating against Plaintiff, discriminatory interference with Plaintiff's property rights, harassing Plaintiff, attempting to evict Plaintiff, and creating and maintaining hostile environment harassment and a hostile housing environment, because of Plaintiff's race and color.

57. Defendants intentionally violated the Fair Housing Act.

58. A substantial motivating reason for Defendants' conduct was Plaintiff's race or color or Defendants' perception of Plaintiff's race or color.

59. Plaintiff was harmed, and Defendants' wrongful acts or omissions proximately caused such harm.

60. Plaintiff's rights were violated and he has suffered harm, including (without limitation) severe emotional, mental, and psychological distress and anguish, as well as humiliation.

61. Plaintiff's harm was substantially caused by Defendants' violations of the Fair Housing Act (42 U.S.C. § 3601, *et. seq.*).

62. Defendants' conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff. Defendants acted with oppression subjecting Plaintiff to cruel and unjust hardship in knowing disregard of his rights.

63. Plaintiff is entitled to recover actual and punitive damages, including (without limitation) pursuant to 42 United States Code section 3613(c).

64. Plaintiff is entitled to recover reasonable attorney's fees and costs, including (without limitation) pursuant to 42 United States Code sections 1988, 3612(p), and 3613(c).

## SECOND CAUSE OF ACTION

### Civil Rights Act Violations (42 U.S.C. § 1982)

### (Against All Defendants)

65. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

66. Defendants violated the Civil Rights Act of 1964 (42 U.S.C. § 1982) by (*inter alia*) discriminating against Plaintiff, discriminatory interference with Plaintiff's property rights, harassing Plaintiff, attempting to evict Plaintiff, and creating and maintaining hostile environment harassment and a hostile housing environment, because of Plaintiff's race and color.

67. Defendants intentionally violated the Civil Rights Act of 1964 (42 U.S.C. § 1982).

68. A substantial motivating reason for Defendants' conduct was Plaintiff's race or color or Defendants' perception of Plaintiff's race or color.

69. Plaintiff was harmed, and Defendants' wrongful acts or omissions proximately caused such harm.

70. Plaintiff's rights were violated and he has suffered harm, including (without limitation) severe emotional, mental, and psychological distress and anguish, as well as humiliation.

71. Plaintiff's harm was substantially caused by Defendants' violations of the Civil Rights Act of 1964 (42 U.S.C. § 1982).

72. Defendants' conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff. Defendants acted with oppression subjecting Plaintiff to cruel and unjust hardship in knowing disregard of his rights.

73. Plaintiff is entitled to recover actual and punitive damages, including (without limitation) pursuant to 42 United States Code section 1982.

74. Plaintiff is entitled to recover reasonable attorney's fees and costs, including (without limitation) pursuant to 42 United States Code section 1988.

### THIRD CAUSE OF ACTION

### California Fair Employment and Housing Act Violations (Cal. Gov. Code § 12955 *et seq.*)

### (Against All Defendants)

75. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

76. Defendants violated the California Fair Employment and Housing Act (California Government Code section 12955 *et seq.*) by (*inter alia*) discriminating against Plaintiff, discriminatory interference with Plaintiff's property rights, harassing Plaintiff, attempting to evict Plaintiff, and creating and maintaining hostile environment harassment and a hostile housing environment, because of Plaintiff's race, color, and ancestry.

67. Defendants intentionally violated the California Fair Employment and Housing Act.

77. A substantial motivating reason for Defendants' conduct was Plaintiff's race, color, or ancestry or Defendants' perception of Plaintiff's race, color, or ancestry.

78. Plaintiff was harmed, and Defendants' wrongful acts or omissions proximately caused such harm.

79. Plaintiff's rights were violated and he has suffered harm, including (without limitation) severe emotional, mental, and psychological distress and anguish, as well as humiliation.

80. Plaintiff's harm was substantially caused by Defendants' violations of the

California Fair Employment and Housing Act.

81. Plaintiff suffered damages in an amount to be proven at trial. Plaintiff is entitled to recover actual damages and other amounts.

82. In doing the acts heretofore alleged, Defendants, and each of them, are guilty of malice, fraud, and/or oppression as defined in Civil Code Section 3294 and Plaintiff should recover exemplary and punitive damages, in addition to actual damages, to make an example of and to punish Defendants, in an amount to be determined at trial.

83. Plaintiff is entitled to recover punitive damages, including (without limitation) pursuant to California Government Code section 12989.2 and California Civil Code section 3294.

84. Plaintiff is entitled to recover reasonable attorney's fees and costs, including (without limitation) pursuant to California Government Code sections 12965(c)(6) and 12989.2.

## FOURTH CAUSE OF ACTION

### Unruh Act Violations (Cal. Civil Code § 51 *et seq.*)

### (Against All Defendants)

85. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

86. Defendants violated the California Unruh Act (California Civil Code section 51 *et seq.*) by (*inter alia*) discriminating against Plaintiff, discriminatory interference with Plaintiff's property rights, harassing Plaintiff, attempting to evict Plaintiff, and creating and maintaining hostile environment harassment and a hostile housing environment, because of Plaintiff's race, color, and ancestry.

87. Defendants intentionally violated the California Unruh Act.

88. A substantial motivating reason for Defendants' conduct was Plaintiff's race, color, or ancestry or Defendants' perception of Plaintiff's race, color, or ancestry.

89. Plaintiff was harmed, and Defendants' wrongful acts or omissions proximately caused such harm.

90. Plaintiff's rights were violated and he has suffered harm, including (without limitation) severe emotional, mental, and psychological distress and anguish, as well as humiliation.

91. Plaintiff's harm was substantially caused by Defendants' violations of the California Unruh Act.

92. Plaintiff suffered damages in an amount to be proven at trial. Plaintiff is entitled to recover actual damages and other amounts.

93. In doing the acts heretofore alleged, Defendants, and each of them, are guilty of malice, fraud, and/or oppression as defined in Civil Code Section 3294 and Plaintiff should recover exemplary and punitive damages, in addition to actual damages, to make an example of and to punish Defendants, in an amount to be determined at trial.

94. Plaintiff is entitled to recover three times the amount of actual damage, including (without limitation) pursuant to California Civil Code section 52.

95. Plaintiff is entitled to recover punitive damages, including (without limitation) pursuant to California Civil Code section 3294.

96. Plaintiff is entitled to recover reasonable attorney's fees and costs, including (without limitation) pursuant to California Civil Code section 52.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress (California Law)

**(Against All Defendants)**

97. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

98. Defendants committed outrageous acts described hereinabove, including (without limitation) writing and posting the note on the windshield of Plaintiff's vehicle on December 26, 2023.

99. In committing the outrageous acts and omissions described hereinabove, Defendants intended to cause Plaintiff emotional distress.

100. Plaintiff suffered severe emotional distress.

101. Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

102. In doing the acts heretofore alleged, Defendants, and each of them, are guilty of malice, fraud, and/or oppression as defined in Civil Code Section 3294 and Plaintiff should recover exemplary and punitive damages, in addition to actual damages, to make an example of and to punish Defendants, in an amount to be determined at trial.

103. Plaintiff suffered damages in an amount to be proven at trial.

104. Plaintiff is entitled to recover punitive damages, including (without limitation) pursuant to California Civil Code section 3294.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs herein prays for judgment as follows, against the Defendants, and each of them:

1. For damages (including, without limitation, general and special damages) in an amount to be proven at trial;
2. For three times the amount of actual damage, including (without limitation) pursuant to California Civil Code section 52;
3. For exemplary and punitive damages in an amount to be proven at trial;
4. For statutory interest and prejudgment interest;
5. For Plaintiff's reasonable attorney's fees;
6. For Plaintiff's costs of suit herein;
7. For such other and further relief as the Court may deem just and proper.

//

Date: July 3, 2025

BUCHANAN & PATTERSON, LLP
By: */s/Brian F. Buchanan*
    Brian F. Buchanan
    Jeremy Friedman

Attorneys for Plaintiff
DICKIE WRIGHTSIL

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demands a jury trial on all of the non-equitable issues and claims.

Date: July 3, 2025

BUCHANAN & PATTERSON, LLP
By: */s/Brian F. Buchanan*
    Brian F. Buchanan
    Jeremy Friedman

Attorneys for Plaintiff
DICKIE WRIGHTSIL